# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| YONAH EL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 5:19-CV-74 (MTT) ) |
| Governor BRIAN KEMP, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## ORDER

Plaintiff Yonah El filed a pro se complaint (Doc. 1), and a motion to proceed *in forma pauperis* ("IFP") (Doc. 2). The Court previously granted his motion to proceed IFP and ordered him to amend his complaint to clarify his allegations.[1] Doc. 6. The Court has reviewed the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). For the following reasons, El's Fourth Amendment claim against Defendant Christopher Thomas Lee is allowed to proceed, and his remaining claims are **DISMISSED**.

## I. FACTUAL ALLEGATIONS[2]

On May 24, 2018, El, an African-American male, was a passenger in Pamela R. Stanescu's vehicle. Doc. 12 at 2. While driving, Stanescu "dozed off behind the wheel

---

[1] El failed to amend his complaint, and the Court ordered him to show cause for his failure to comply with the Court's order. Docs. 6; 10. The Court received his response to the show cause order along with his amended complaint. Docs. 12; 12-1. His response stated that he "was homeless, he had no job, no income, no prospects, and was suffering from trauma as the result of his [recent] incarceration." Doc. 12-1 at 1. The Court finds that El showed sufficient cause for his failure to comply with the Court's order and will thus consider his amended complaint.

[2] At the frivolity review stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (explaining the standard of Fed. R. Civ. P. 12(b)(6)) (quotation marks and citation omitted); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (stating that frivolity review under 28 U.S.C. § 1915(e)(2)(B) is governed by the same standard as Fed. R. Civ. P. 12(b)(6)).

and almost lost control of the car." *Id.* She then pulled into a parking lot for El to drive. *Id.* As they were switching seats, a Warner Robins police car drove past them slowly. *Id.* Shortly after merging back into traffic and while obeying the speed limit, El passed the same police car that was parked on the side of the road. *Id.* at 3. The police car immediately started following El and flashing its lights, and El pulled over. *Id.*

Lee then "approached the vehicle on the driver's side and asked where they were coming from." *Id.* El, believing that he was being racially "profiled," refused to answer, but Stanescu replied that they "had left Atlanta earlier that day and [were] traveling to her home in Warner Robins." *Id.* Lee then asked El for identification, and El asked Lee if he was under arrest, to which he replied, "No." *Id.* El then asked Lee if he was "free to go," and, again, Lee replied, "No." *Id.*

At this point, El believed he was under arrest because of Lee's response and three Warner Robins police cars blocking him. *Id.* El then asked Lee if he could call his attorney. *Id.* Again, Lee replied, "No," and further explained that this was an investigatory stop. *Id.* El responded, "You are investigating *me*, so I have a [Fifth] Amendment right to remain silent, and if you wish to ask me any questions, I will call my attorney and have him mediate the conversation." *Id.* (emphasis in original). Lee, again, asked El for his identification and told him that if he refused, he would be arrested. *Id.* at 4. El, again, refused and instead "showed [Lee] the highlighted portions in his pocket Constitution of the appropriate amendments." *Id.* Lee, again, asked for identification, and El "tried to explain the constitutional issues involved and again offered to contact his attorney to medicate [sic] the conversation." *Id.* Lee then arrested El. *Id.*

John Doe 1 assisted Lee with searching El. *Id.* Lee told El that he was being arrested for obstruction and then added speeding "as an afterthought." *Id.* El then

asked Lee to show him the "read-out of the speed he had been traveling," but Lee declined. *Id.* El was taken to the Warner Robins Police Department ("WRPD"), and he asked to go before a magistrate judge before being processed because he believed his arrest was unconstitutional. *Id.* WRPD refused. *Id.* El was then taken to the Houston County Detention Center ("HCDC") where he again asked to go before a magistrate judge before being processed. *Id.* "Eventually, Plaintiff was taken before someone who said they were not there to adjudicate the matter but only to set bail. Plaintiff stated he did not understand and wanted to see a real judge." *Id.*

The following week, El was arraigned by Judge Jason Ashford where he "challenged the jurisdiction of a state court to adjudicate the case, as a federal question was involved," but the "judge denied the challenge." *Id.* After reading the charge, Judge Ashford asked El how he wanted to plead. *Id.* at 5. El "stated that there was no complaining witness present, and he could not rebut an unstated presentment, therefore he could not enter a plea at this time. Judge Ashford stated that he would enter a plea of not guilty on the Plaintiff's behalf. The Plaintiff objected vociferously, and stated that entering a plea was his job or that of his attorney." *Id.* The Plaintiff was then taken out of the courtroom and returned to HCDC for five weeks until he made bond. *Id.*

During *voir dire*, El requested a continuance because he had no motions hearing and had not seen the discovery material. *Id.* Judge Ashford told him it was "too late" but that he could "look at the discovery material in the Prosecutor's office during lunch." *Id.* After reviewing the documents, El complained to Judge Ashford that he had never been given discovery materials and was thus unable to call or subpoena rebuttal witnesses. *Id.* Judge Ashford ignored El's complaints and proceeded with the trial. *Id.*

During the trial, the prosecution misrepresented documents.  *Id.*  El objected, and Judge Ashford overruled him.  *Id.*  El proceeded to make multiple objections throughout the prosecution's case, which were all overruled.  *Id.*  When Lee was called to the stand, Lee stated that El told him that he was a "sovereign citizen" and "did not need a license to drive" when Lee stopped him for speeding on May 24.  *Id.*  The tape from Lee's body cam was then played for the jury, and El claims that the tape "confirmed that the Plaintiff never said that he would not give the officer his ID, but instead had exercised his [Fifth] and [Sixth] Amendment constitutional rights.  The Plaintiff used Officer Lee's body cam to confirm that Officer Lee had perjured himself when he said the Plaintiff had said that he was a sovereign citizen and a fellow traveler and that he did not need a license to drive."  *Id.*  On cross-examination, El asked Lee if he had any proof "other than his word" that Lee was speeding, and Lee said he did not.  *Id.*  At the end of the trial, Judge Ashford did not allow El to use legal arguments in his closing argument and did not instruct the jury regarding Lee's false testimony.  *Id.* at 6.  The jury found El guilty of obstruction and two traffic offenses.  *Id.*

During his sentencing, El "beseeched Judge Ashford that, based on his age and his back injury which requires the Plaintiff to use morphine, to wear a back brace, and to sleep on [a] special bed, and given the low level of his misdemeanor, that a jail sentence would be cruel punishment, and requested probation. . . .  The Plaintiff also explained he was in the process of setting up a Youth Financial Literacy Program. . . ."  *Id.*  Judge Ashford sentenced El to six months in prison "with no good time" and three years of probation, plus court fees and fines.  *Id.*

While serving at HCDC, El was given "no access to documents for filing an appeal," but was ultimately able to file one.  *Id.*  El claims that Judge Ashford "sat on the

appeal for 30 days and never responded to the Plaintiff," even though El contacted his chambers "several times." *Id.* Judge Ashford denied El's appeal without stating why. *Id.* El then filed an appeal with the Georgia Court of Appeals, and the prosecutor challenged it, "stating the timeline had expired." *Id.* El claims that the initial appeal was filed in a timely manner, but "Judge Ashford's action of sitting on the appeal for 30 days ran out the clock." *Id.* The Court of Appeals then "instructed the Plaintiff that though they could not hear the case, there was a process in place to force Judge Ashford to forward the information to the superior court for review. By the time this information had been fully divulged to the Plaintiff, he had two weeks remaining on his sentence." *Id.* El ultimately chose not to file an appeal. *Id.*

El then filed his complaint with the Court, alleging that his Fourth, Fifth, and Sixth Amendment rights were violated by Lee, John Doe 1, and John Doe 2; that Lee, John Doe 1, and John Doe 2 violated 18 U.S.C. § 241 and § 242; that WRPD and Warner Robins Chief of Police Brett Evans are "co-conspirators and party to the suit;" that he was denied access to legal materials at HCDC; that he was denied "access to an absentee ballot" at HCDC; that his Fourth Amendment rights were violated when his "numerous books and $24.18 in cash" were seized at HCDC; and that "Probation Officer S[.] McClendon of CSRA . . . became a co-conspirator to violate the Plaintiff's constitutional rights under 18 USC 241 and 18 USC 242 by using false, erroneous and misleading information to secure an illegal arrest warrant against the Plaintiff on April 25, 2019. . . ." *Id.* at 1-2, 6.[3] El states that after he filed his complaint, he was, again,

---

[3] Sections 241 and 242 of Title 18 of the United States Code are criminal statutes. A private citizen has no standing to bring a criminal action against another. *Otero v. U.S. Atty. Gen.*, 832 F.2d 141, 141 (1987) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Accordingly, those claims brought under these statutes will not be considered.

"incarcerated in Houston County, [and] he is faced with the same situation regarding lack of access to legal information, material, etc." *Id.* at 6-7. El seeks $470 million in damages. *Id.* at 7.

## II. DISCUSSION

When a litigant is allowed to proceed IFP, the Court screens the complaint in accordance with § 1915(e)(2)(B), which is not restricted to prisoner complaints. *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (stating that the district court could dismiss complaint of a nonprisoner proceeding IFP under § 1915(e)(2)(B)(ii)); *Mitchell v. Farcass*, 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) (Lay, J. concurring) (stating that § 1915(e) "applies to all IFP litigants—prisons who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories"). Section 1915(e)(2)(B) requires a federal court to dismiss a complaint that is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted[;]" or (2) "seeks monetary relief from a defendant who is immune from such relief."

A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted). A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and that the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (internal quotations and citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009)

(explaining that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

In making the above determinations, all factual allegations in the complaint must be viewed as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). Moreover, "*[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1581 (11th Cir. 1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of his claim or claims, then the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003) (affirming the district court's dismissal of a § 1983 complaint because the plaintiff's factual allegations were insufficient to support the alleged constitutional violation).

**A. WRPD and HCDC**

Pursuant to Federal Rule of Civil Procedure 17(b), the "capacity to sue or be sued" is determined "by the law of the state where the court is located." Thus, Georgia law controls this issue. The Georgia Supreme Court has explained that there are only three classes of legal entities: "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial person as the law recognizes as being capable to sue." *Ga. Insurers Insolvency Pool v. Elbert Cty.*, 258 Ga. 317, 319, 368 S.E.2d 500, 501 (1988) (quotation marks and citation omitted). WRPD and HCDC fall into none of

these categories. To the contrary, courts have recognized that county detention facilities, police departments, and sheriff's departments are not legal entities subject to suit or liability under § 1983. *See Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (advising that "sheriff's departments and police departments are not usually considered legal entities subject to suit"). In light of the foregoing, the Court concludes that El's claims against WRPD and HCDC must be **DISMISSED with prejudice**.

### B. John Doe 1 and 2

"As a general matter, fictitious party pleading is not permitted in federal court. [The Court has] created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (quoting *Dean*, 951 F.2d at 1215-16). In other words, the plaintiff's description of the defendant must be specific and adequate enough to allow the defendant to be served with process. *Dean*, 951 F.2d at 1216 (citations omitted). In the present case, the Court has no way of identifying and serving John Doe 1 and 2. Accordingly, John Doe 1 and 2 are **DISMISSED without prejudice**.[4]

### C. Evans and Talton

To the extent that El seeks to hold Evans and Talton liable for the actions of their employees at WRPD and HCDC, the Eleventh Circuit has held that a plaintiff cannot prevail under § 1983 based on *respondeat superior*. *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (citations omitted); *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986) (citation omitted). Instead, El must show that the supervisor

---

[4] El may move to amend his complaint if and when he discovers the identities of John Doe 1 and 2. El should, however, keep in mind any applicable statute of limitations.

personally participated in the alleged constitutional violation or that there is a causal connection, or an affirmative link, between the actions of the supervising official and the alleged constitutional deprivation.  *H.C. by Hewett*, 786 F.2d at 1086-87; *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1504 (11th Cir. 1985).  To allege an affirmative link, El must allege one of the following: (1) personal participation; (2) "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so[;]" (3) "a supervisor's custom or policy [that] results in deliberate indifference to constitutional rights[;]" or (4) the "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quotation marks and citations omitted).

El has not alleged any facts indicating personal participation by Evans or Talton or any widespread abuse "sufficient to notify supervising officials [that the abuse is] obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).  El has also not alleged that Evans' and Talton's customs or policies resulted in any constitutional violations.  Furthermore, the isolated misconduct alleged by El cannot be called a "pattern."  *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1330 (11th Cir. 2015).  Accordingly, El's claims against Evans and Talton—specifically those regarding responsibility for Lee and John Doe 1 and 2's conspiracy and HCDC employees denying El his right to vote, unlawfully seizing El's books and money, and denying El access to legal materials—are **DISMISSED without prejudice**.[5]

---

[5] El has also alleged a conspiracy between Lee and other Defendants, including Evans, to deprive him of his Fourth, Fifth, and Sixth Amendment rights.  "To allege a civil conspiracy, [El] must cite facts allowing for the *reasonable* inference that an agreement existed between [the Defendants] to do an unlawful act

### D. McClendon

El alleges that on April 25, 2019, he was arrested again, this time based on "false, erroneous, and misleading information" provided by McClendon to secure an arrest warrant. Doc. 12 at 2. El also claims that the officers needed a search warrant to enter a third party's residence to arrest him. *Id.*

To properly join defendants and claims under Federal Rule of Civil Procedure 20(a)(2), the plaintiff must establish that he is asserting a right to relief against them "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences," and that "any question of law or fact common to all defendants will arise in the action." Failure to comply with the Federal Rules warrants dismissal. Fed. R. Civ. P. 41(b). The Eleventh Circuit applies the "logical relationship" test to determine whether claims arise from the same transaction or occurrence for joinder purposes. *See, e.g., Republic Health Corp. v. Lifemark Hosp. Corp. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985). "Under this test, there is a logical relationship when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Id.* (quotation marks omitted).

El's short, vague claim against McClendon regarding his April 2019 arrest by unknown and unidentified officers and his claims outlined regarding his May 2018 arrest

---

(or a lawful act by unlawful means), that some overt act was done in furtherance of the conspiracy, and that [the Plaintiff] was harmed as a result." *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, 2016 WL 11501768, at *5 (S.D. Fla. 2016) (internal quotation marks and citations omitted) (emphasis added). Because El offers only conclusions and no facts alleging neither a causal connection nor specific actions taken by Evans, he fails to plausibly allege a conspiracy claim. *Weiland v. Palm Beach Cty. Sherriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015); *Westley v. Alberto*, 703 F. App'x 727, 732 (11th Cir. 2017) (dismissing a complaint because it did not identify the specific actions taken by individual defendants who allegedly "conspired, perpetrated and conducted unlawful . . . acts"). Accordingly, El's conspiracy claims against those Defendants are **DISMISSED without prejudice**.

by Lee and John Doe 1 are not logically related because they do not rest on the same operative facts. The arrests occurred almost one year apart, and El has provided no details regarding his 2019 arrest. When two sets of claims function independently of one another, joinder is not appropriate. Fed. R. Civ. P. 20(a)(2)(A); *see also Skillern v. Ga. Dep't of Corr. Comm'r*, 379 Fed. App'x 859, 860 (11th Cir. 2010) (holding that more than a minimal connection between a series of different transactions or occurrences must exist before joinder is proper). Accordingly, El's claim against McClendon is **DISMISSED without prejudice**.[6]

### E. Lee

#### 1. Sixth Amendment

The Sixth Amendment guarantees criminal defendants the right to an attorney. El claims that Lee violated his Sixth Amendment right when he refused to allow El to call his attorney while he was questioning him before his arrest. Doc. 12 at 3-4. But a person's Sixth Amendment right "does not attach until a prosecution is commenced." *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 198 (2008) (quotation marks and citations omitted). In other words, the right does not attach before the defendant is arrested. *See, e.g., id.* Accordingly, El's Sixth Amendment claim against Lee is **DISMISSED without prejudice**.

#### 2. Fifth Amendment

The Fifth Amendment prohibits only compelled disclosures that the witness reasonably believes could be used in a criminal prosecution. *Kastigar v. United States*,

---

[6] While the Court could potentially attempt to add or drop parties or sever any claims against a party to remedy this misjoinder, *see* Fed. R. Civ. P. 21, it is not incumbent upon the Court to re-write El's complaint so that it complies with the Federal Rules. *See GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (holding that while "[c]ourts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education," a court may not "serve as *de facto* counsel for a party" or "rewrite an otherwise deficient pleading in order to sustain an action").

406 U.S. 441, 445 (1972). Refusal to disclose one's identity to police—whether during a lawful or unlawful investigatory stop—must be based on an "articulated real and appreciable fear that his name would be used to incriminate him, or that it would furnish evidence needed to prosecute him." *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.*, 542 U.S. 177, 190 (2004) (quotation marks and citation omitted). Refusal to offer identification only because one thinks his name is "none of the officer's business" is not protected by the Fifth Amendment, as the Fifth Amendment does not override O.C.G.A. § 16-11-36(b)[7] "absent a reasonable belief that the disclosure would tend to incriminate him." *Id.* at 190-91. El alleges that "he was being profiled" by Lee and thus chose not to answer Lee's questions regarding his identity. Doc. 12 at 3. El has not alleged that he believed "his name would be used to incriminate him, or that it would furnish evidence needed to prosecute him." Accordingly, El's Fifth Amendment compelled disclosure claim against Lee is **DISMISSED without prejudice**.

### 3. Fourth Amendment

False arrest claims brought under § 1983 and the Fourth Amendment provide recovery of damages between the time of arrest or seizure and the issuance of legal process. *Wallace v. Kato*, 549 U.S. 384, 390 (2007). The Eleventh Circuit has held that "because an illegal . . . arrest may be followed by a valid conviction, a successful § 1983 action for Fourth Amendment search and seizure violations does not necessarily imply the invalidity of a conviction.[8] El claims Lee violated his Fourth Amendment right when he pulled him over and questioned him without cause. Construed liberally and in the

---

[7] O.C.G.A. § 16-11-36(b) prohibits a person from refusing to identify himself to police.

[8] As a result, *Heck* [*v. Humphrey*, 512 U.S. 477 (1994)] does not generally bar such claims." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003); *Wallace v. Smith*, 145 F. App'x 300, 301 (11th Cir. 2005).

light most favorable to El, his Fourth Amendment false arrest claim against Lee passes muster under § 1915(e)(2)(B) and shall go forward.

### III. CONCLUSION

Pursuant to 28 U.S.C. § 1915 and for the reasons set forth above, El's Fourth Amendment claim against Lee shall go forward. Accordingly, the Court **ORDERS** service on Lee by the United States Marshals Service. El's remaining claims are **DISMISSED**, and the remaining Defendants are **TERMINATED** as parties to this action.

**SO ORDERED**, this 15th day of October, 2019.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
